

**FILED**
**U.S. DISTRICT COURT**
**EASTERN DISTRICT ARKANSAS**

DEC 1 5 2023

**TAMMY H. DOWNS, CLERK**

By:_____
**DEP CLERK**

**In The United States District Court**
**For The Eastern District of Arkansas**
Central    ~~Little Rock~~ Division

|  |  |
|---|---|
| Steven R. Smith<br><br>Plaintiff,<br><br>vs.<br><br>State of Arkansas;<br>Pulaski County, Arkansas; and<br>John and Jane Does 1-20<br><br>Defendants. | Case #:   4:23-cv-1196-JM<br><br>Civil Rights Act of 1871,<br>42 U.S.C. § 1983<br><br>Jury Trial Demanded<br><br>This case assigned to District Judge **Moody**<br>and to Magistrate Judge **Volpe** |

---

### Plaintiff's Original Complaint

---

Plaintiff, Steven R. Smith, by his attorneys, The Law Offices of Darren O'Quinn,

PLLC, for his complaint, states:

## Table of Contents

**Table of Authorities**...............................................................................ii

**Introduction**.............................................................................................1

**Jurisdiction and Venue**.........................................................................2

**Parties**.......................................................................................................3

**Factual Allegations**...............................................................................3

**Cause of Action**......................................................................................6

**Damages**.................................................................................................12

**Jury Demand**.........................................................................................13

**Prayer for Relief**..................................................................................14

## Table of Authorities

### Constitutional

*Fourth Amendment of the United States Constitution*…………….............................8

*Fifth Amendment of the United States Constitution*…………….............................8, 9, 10, 11

*Fourteenth Amendments of the United States Constitution*…………….....................8, 9, 10, 11


### Statutes

28 U.S.C. § 1331…………….....................................................................2

28 U.S.C. § 1343 ...............................................................................2

28 U.S.C. § 1367 ............................................................................. .. 2

28 U.S.C. § 1391 ...............................................................................2

42 U.S.C. § 1983 ............................................................... 2, 5, 8, 10, 11

*Ark. Code Ann. §9-14-201*…………….......................................................3

*Ark. Code Ann. §12-12-209*…………….....................................................4

*Ark. Code Ann. §14-14-1301*……………....................................................4

### Cases

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)………………….....................8, 10, 11

*Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2000)………………….....................5, 11

## Introduction

1.    Mr. Smith woke up on Saturday, November 4, 2023, as a proud father and excited by taking his family to see his daughter's middle school drill team competition that morning.

2.    He did not make it to the competition, however, because he was falsely arrested and handcuffed in front of his wife and young daughter by the Cabot Police Department after he was stopped for a minor traffic violation at 10:31 a.m.

3.    Although he informed the arresting officer (and subsequently the Pulaski County Sheriff's Deputies) that there was an error, Mr. Smith was transported to and illegally jailed by the Pulaski County Sheriff's Office at the Pulaski County Regional Detention Center until 12:13 p.m. on Monday, November 6, 2023 (about fifty hours).

4.    During this illegal detention, Mr. Smith was booked, photographed (with his mug shot publicly posted on the Internet), fingerprinted, strip searched, jailed with violent felons, forced to sleep on a metal rack with no mattress and share eating utensils, relieve himself in front of others, and otherwise stripped of his liberty and dignity while being subjected to other humiliation, indignities, harms, and losses.

5.    The cause of Mr. Smith's arrest originated with a *Pick-Up Order* ("*Order*") requested by the Arkansas Office of Child Support Enforcement and issued by the Pulaski County Circuit Court, Fifteenth Division, Case No. 60DR-12-1292 on October 5, 2017.

1

6.      That *Order*, however, had been rescinded by the Circuit Court on November 23, 2021 - two years before Mr. Smith's arrest.

7.      The Arkansas Office of Child Support Enforcement was responsible for entering the *Order* into the records of the Pulaski County Sheriff's Office to enforce it and, likewise, updating and recalling it when it was rescinded by the Circuit Court.

8.      The Arkansas Office of Child Support Enforcement claims that it recalled the *Order* by sending a facsimile to the Pulaski County Sheriff's Office on December 1, 2021, but despite a request cannot produce a facsimile receipt verifying that claim.

9.      On the other hand, the Pulaski County Sheriff's Office claims that it has no record of receiving the purported facsimile.

### Jurisdiction and Venue

8.      This actions arises under the *Civil Rights Act of 1871*, *42 U.S.C. § 1983*, and the laws of the state of Arkansas. The Court has subject matter jurisdiction over plaintiff's claims pursuant to *28 U.S.C. §§ 1331* (federal question), *1343* (civil rights), and *1367* (supplemental jurisdiction over related state law claims).

9.      This court has personal jurisdiction over the defendants because the acts or omissions giving rise to the claims asserted herein against them occurred in, and they reside in, this judicial district.

10.     Venue is proper in this judicial district pursuant *to 28 U.S.C. § 1391* because a substantial part of the events and the injuries giving rise to the claims occurred in this judicial district.

2

## Parties

11.     Steven R. Smith (Mr. Smith) is a citizen and resident of the state of Texas.

12.     The state of Arkansas maintains, manages, and operates a state agency, the Department of Finance and Administration, which in turn maintains, manages, and operates the Office of Child Support Enforcement (OCSE).

13.     Pulaski County, Arkansas, a county and political subdivision of the state of Arkansas, maintains, manages, and operates a county agency, the Pulaski County Sheriff's Office (PCSO), which in turn maintains, manages, and operates the Pulaski County Regional Detention Center.

14.     Upon information and belief, Defendant J. Does 1-20 are residents of the state of Arkansas and over the age of eighteen. At all times material hereto, these defendants were officials, agents, or employees of the other defendants or an affiliating agency and were acting under color of state law at all times. Defendants John and Jane Does 1-20 are being sued in their individual and official capacity. Their true identities are currently unknown to Mr. Smith, and he reserves the right to amend this Complaint to name them as defendants as soon as their identities are ascertained.

## Factual Allegations

### *The Arkansas Child Support Enforcement System*

15.     The OCSE is responsible for enforcing child-support obligations in Arkansas under the provisions of *Ark. Code Ann. §9-14-201, et seq.* and other laws including obtaining court-ordered body attachments for the failure to comply with a

3

court's order to pay child support and reporting and updating the body attachment to the PCSO.

16.     The PCSO is responsible for enforcing court-ordered body attachments under the provisions of *Ark. Code Ann. §14-14-1301, et seq.* and does so, in part, by entering the body-attachment into its computer system as well as that of a statewide computer system operated by the Arkansas Crime Information Center (ACIC) as provided by *Ark. Code Ann. §12-12-209.*

17.     Once the PCSO inputs the body attachment into the system it is then automatically transmitted to law enforcement officers statewide, who can then search it during a traffic stop to determine if the driver is wanted.

18.     If the driver is wanted, then the law enforcement agency enforces the body attachment by arresting the driver and transporting them to the agency who entered the body attachment into the system.

19.     The OCSE and PCSO are jointly responsible for the accuracy of the body attachments entered into the system under their authority and the updating of them with any status changes.

*Origin of the Erroneous Body Attachment*

20.     The cause of Mr. Smith's arrest originated with a *Pick-Up Order* ("*Order*") requested by the OCSE and issued by the Pulaski County Circuit Court, Fifteenth Division, Case No. 60DR-12-1292 on October 5, 2017.

21.     That *Order*, however, was rescinded by the Circuit Court on November 23, 2021 - two years before Mr. Smith's arrest.

4

22.     The OCSE was responsible for entering the rescinding *Order* into the records of the PCSO to enforce it and, likewise, recalling it when it was rescinded by the Circuit Court and no longer enforceable.

23.     Upon information and belief, this is not the first time the OCSE has been brought to task for failing to follow its obligations related to body attachments and keeping them updated.

24.     Indeed, at least one Pulaski County Circuit Court has had to send its bailiff to the OCSE to physically supervise the updating of rescinded body attachments to avoid the very consequences that were wrongfully inflicted upon Mr. Smith in this case.

25.     The OCSE claims that it recalled the *Order* by sending a facsimile to the PCSO on December 1, 2021, but despite a request cannot produce a facsimile receipt verifying that claim.

26.     On the other hand, the PCSO claims that it has no record of receiving the purported facsimile.

27.     Upon information and belief, however, the PCSO has had issues with handling court documents and updating them to comply with court orders. *See, e.g., Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2000) ("$147,000 award in *42 U.S.C. § 1983* action arising out of a wrongful two-hour detention by the City of Little Rock Police and PCSO).

*Unlawful Arrest of Mr. Smith*

28.     Mr. Smith was falsely arrested and handcuffed in front of his wife and

5

young daughter by the Cabot Police Department after he was stopped for a minor traffic violation at 10:31 a.m. on Saturday, November 4, 2023, while on his way to see his daughter's middle school drill team competition.

29.     Mr. Smith was transported to and illegally jailed by the Pulaski County Sheriff's Office at the Pulaski County Regional Detention Center until 12:13 p.m. on Monday, November 6, 2023 (about fifty hours) when he was finally released pursuant to a Speed Letter from the Circuit Court.

30.     During his detention, Mr. Smith was booked, photographed (with his mug shot publicly posted on the Internet), fingerprinted, strip searched, jailed with violent felons, forced to sleep on a metal rack with no mattress and share eating utensils, relieve himself in front of others, and otherwise stripped of his liberty and dignity while being subjected to other humiliation, indignities, harms, and losses.

## Causes of Action

### *Count One: False Arrest/Imprisonment*

31.     The allegations contained in paragraphs 1-30 are hereby incorporated into this Count One as if fully set forth herein.

32.     Mr. Smith was falsely arrested on Saturday, November 4, 2023, and incarcerated for approximately fifty hours at the Pulaski County Regional Detention Center based on defendants' entries into the PCSO and ACIC databases based on a constitutionally invalid body attachment.

33.     Therefore, Mr. Smith's arrest was without probable cause and his

detention was unlawful.

34.    Mr. Smith's unlawful arrest and detention was caused by officials, agents, or employees of defendants working within the scope of their employment.

35.    As a result of his unlawful arrest and detention, Mr. Smith suffered the injuries, damages, harms, and losses set forth herein.

### Count Two: Negligence

36.    The allegations contained in paragraphs 1– 35 are incorporated into this Count Two as if fully set forth herein.

37.    The defendants had a duty to take reasonable steps to guard against detaining citizens on known constitutionally invalid body attachments.

38.    After the Circuit Court rescinded the body attachment, the OCSE had a duty to report and update that information with the PCSO who, in turn, had a duty to report and update that information in the PCSO and ACIC databases.

39.    The defendants, however, failed to take such reasonable steps to fulfill their duty and caused Mr. Smith to be falsely arrested and detained.

40.    Mr. Smith's unlawful arrest and detention was caused by officials, agents, or employees of defendants working within the scope of their employment.

41.    As a result of his unlawful arrest and detention, Mr. Smith suffered the injuries, damages, harms, and losses set forth herein.

*Count Three: 42 U.S.C. § 1983*
*Monell Claim under the Fourth and Fourteenth Amendments*

42.    The allegations contained in paragraphs 1-41 are hereby incorporated into this Count Three as if fully set forth herein.

43.    Mr. Smith was not wanted on a body attachment and defendants knew that but failed to carry out their duties and responsibilities as set forth herein.

44.    In fact, they took no action to ensure or inform anyone that Mr. Smith should not be arrested and detained illegally in violation of his rights under the *Fourth* and *Fourteenth Amendments* to the *United States Constitution*. This caused Mr. Smith to be falsely arrested and detained.

45.    Mr. Smith's unlawful arrest and detention was caused by officials, agents, or employees of defendants working within the scope of their employment.

46.    As a result of his unlawful arrest and detention, Mr. Smith suffered the injuries, damages, harms, and losses set forth herein.

*Count Four: 42 U.S.C. § 1983*
*Monell Claim under the Fifth and Fourteenth Amendments*
*Custom/Policy Regarding Outgoing Updated Body Attachment Information*
*(Against OCSE Only)*

47.    The allegations contained in paragraphs 1–47 are hereby incorporated into this Count Four as if fully set forth herein.

48.    At all times material hereto, OCSE's policy and custom regarding the transmission of outgoing body attachment messages from its agency, and OCSE policy and custom regarding the distribution of, and responsibility for, such

8

messages within the agency, all but ensured that critical messages, such as that received from the Circuit Court concerning rescinding Mr. Smith's body attachment, would be delayed, misplaced, or mishandled.

49.    At all times material hereto, it was known to OCSE that mishandling of the messages between it and the PCSO were common, if not frequent.

50.    Upon information and belief, this is not the first time the OCSE has been brought to task for failing to follow its obligations related to body attachments and keeping them updated.

51.    Indeed, at least one Pulaski County Circuit Court has had to send its bailiff to the OCSE to physically supervise the updating of rescinded body attachments to avoid the very consequences that were wrongfully inflicted upon Mr. Smith in this case.

52.    The OSCE, however, did nothing to correct or improve its policies and customs.

53.    The OCSE's policies and customs reflect a conscious and willful indifference to the constitutional rights of Mr. Smith and others under the *Fifth and Fourteenth Amendments* to the *United States Constitution*.

54.    As a direct and proximate result of OCSE's policies and customs, Mr. Smith's constitutional rights have been violated.

55.    This caused Mr. Smith to be falsely arrested and detained.

9

56. Mr. Smith's unlawful arrest and detention was caused by officials, agents, or employees of defendants working within the scope of their employment.

57. As a result of his unlawful arrest and detention, Mr. Smith suffered the injuries, damages, harms, and losses set forth herein.

58. Mr. Smith also requests an award of punitive damages based on OCSE's misconduct, actual malice, and recklessness so as to evidence a conscious disregard of his rights.

*Count Five: 42 U.S.C. § 1983*
*Monell Claim under the Fifth and Fourteenth Amendments*
*Custom/Policy Regarding Incoming Updated Body Attachment Information*
*(Against PCSO Only)*

59. The allegations contained in paragraphs 1–59 are hereby incorporated into this Count Five as if fully set forth herein

60. At all times material hereto, PCSO's policy and custom regarding the transmission of incoming body attachment messages from OCSE, and PCSO policy and custom regarding the distribution of, and responsibility for, such messages within it, all but ensured that critical messages, such as that received from the OCSE concerning rescinding Mr. Smith body attachment, would be delayed, misplaced, or mishandled.

61. At all times material hereto, it was known to PCSO that mishandling of the messages between the OCSE and the PCSO were common, if not frequent.

10

62.   Indeed, the PCSO has had a history of issues in handling court documents, updating them, and complying with court detention orders. *See, e.g., Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2000) ($147,000 award in *42 U.S.C. § 1983* action arising out of a wrongful two-hour detention by the City of Little Rock Police and PCSO).

63.   The PCSO, however, did nothing to correct or improve its policies and customs.

64.   The PCSO's customs and policies reflect a conscious and willful indifference to the constitutional rights of Mr. Smith and others under the *Fifth* and *Fourteenth Amendments* to the *United States Constitution*.

65.   This caused Mr. Smith to be falsely arrested and detained.

66.   Mr. Smith's unlawful arrest and detention was caused by officials, agents, or employees of defendants working within the scope of their employment.

67.   As a result of his unlawful arrest and detention, Mr. Smith suffered the injuries, damages, harms, and losses set forth herein.

68.   Mr. Smith also requests an award of punitive damages based on OCSE's misconduct, actual malice, and recklessness so as to evidence a conscious disregard of his rights.

*Count Six: 42 U.S.C. § 1983*
*Monell Claim under the Fifth and Fourteenth Amendments*
*For Failure to Train*

11

69.     The allegations contained in paragraphs 1–69 are hereby incorporated into this Count Six as if fully set forth herein.

70.     The defendants failed to adequately (1) supervise and train their officials, agents, or employees with respect to the proper handling of and attention to outgoing and incoming messages rescinding body attachments; (2) supervise and train them to conduct thorough reviews of PCSO and ACIC reports, particularly where, as here, the body attachment was clearly rescinded by the Circuit Court (which status could have been easily discerned by a review of the public court records in Mr. Smith's case that they had available to them).

71.     The defendants failed to adequately supervise and train their officials, agents, or employees despite widespread knowledge of repeated problems they were having in handling rescinded body attachments in to the constitutional rights of Mr. Smith and others under the *Fifth* and *Fourteenth Amendments* to the *United States Constitution*.

72.     This caused Mr. Smith to be falsely arrested and detained.

73.     Mr. Smith's unlawful arrest and detention was caused by officials, agents, or employees of defendants working within the scope of their employment.

74.     As a result of his unlawful arrest and detention, Mr. Smith suffered the injuries, damages, harms, and losses set forth herein.

75.     Mr. Smith also requests an award of punitive damages based on OCSE's misconduct, actual malice, and recklessness so as to evidence a conscious disregard of his rights.

12

**Damages**

76.    During his detention, Mr. Smith was booked, photographed (with his mug shot publicly posted on the Internet), fingerprinted, strip searched, jailed with violent felons, forced to sleep on a metal rack with no mattress and share eating utensils, relieve himself in front of others, and otherwise stripped of his liberty and dignity while being subjected to other humiliation and indignities.

77.    As a proximate result of the above conduct, Mr. Smith is entitled to damages against defendants for causing him to suffer a loss of liberty, suffer and continue to suffer pain, mental anguish, grief, embarrassment, humiliation, trauma, disability, loss of enjoyment of life, loss of quality of life and personal dignity, lost wages and diminished earning capacity, and other injuries, damages, harms, and losses as described herein and in discovery in this case, in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and as proven at trial.

78.    Moreover, because defendants' conduct was not a mistake and they were on notice of the matters set forth in this complaint, and they knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in injury, yet they still failed to discharge their responsibilities to Mr. Smith and continued their conduct in reckless disregard and with a conscious indifference for his rights and safety causing him to suffer the injuries set forth herein, defendants are liable for punitive damages in an amount exceeding the minimum amount required for federal court jurisdiction in diversity

13

of citizenship cases and sufficient to punish defendants and deter them and others from similar conduct.

## Jury Demand

75.    Mr. Smith hereby demands a trial by jury.

## Prayer for Relief

THEREFORE, Plaintiff, Steven R. Smith, respectfully requests the following relief against defendants:

A.    All available compensatory damages, including, but not limited to damages related to the violation of the above laws, his false arrest, and detention and all compensatory damages available under state and federal law in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and as proven at trial;

B.    Punitive damages in an amount exceeding the minimum amount required for federal court jurisdiction in diversity of citizenship cases and sufficient to punish defendants and deter them and others from similar conduct;

C.    Attorney's fees and costs;

D.    Prejudgment interest as appropriate; and

E.    All other relief that this Court deems just and equitable and to which plaintiff is entitled.

**Dated: December 15, 2023.**

Respectfully submitted,

M. Darren O'Quinn, AR Bar No. 87-125
**LAW OFFICES OF DARREN O'QUINN PLLC**
B. Ram Suri Professional Building
36 Rahling Circle, Suite 4
Little Rock, AR 72223
Phone: (501) 817-3124
Fax: (501) 817-3128
Email: Darren@DarrenOQuinn.com


*Attorney for Plaintiff Steven R. Smith*

15